IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| 1) ROBYN PARKER, | ) | |
| | ) | **CJ-2025-00110** |
| Plaintiff, | ) | **KELLY M. GREENOUGH** |
| | ) | |
| vs. | ) | Case No. : |
| | ) | |
| 1) UNIVERSAL PROTECTION, | ) | Attorney Lien Claimed  **DISTRICT COURT FILED** |
| SERVICE, LP, d/b/a ALLIED | ) | |
| UNIVERSAL SECURITY SERVICES, | ) | **JAN 08 2025** |
| 2) DETENTION OFFICER REGAL, | ) | |
| 3) CITY OF TULSA, OKLAHOMA, | ) | Jury Trial Demanded   DON NEWBERRY, Court Clerk STATE OF OKLA. TULSA COUNTY |
| | ) | |
| Defendants. | ) | |

## PETITION

COMES NOW the Plaintiff, Robyn Parker ("Plaintiff"), by and through her attorneys of record, and for her causes of action against Defendants Universal Protection Service, LP, d/b/a Allied Universal Security Services ("Allied"), Detention Officer Regal ("DO Regal" or "Regal"), and the City of Tulsa, Oklahoma, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. The Plaintiff, Robyn Parker, is a resident of Tulsa County, Oklahoma.

2. Defendant Universal Protection Service, LP, d/b/a Allied Universal Security Services is a foreign for-profit limited partnership, doing business in Tulsa County, Oklahoma. At all pertinent times, Defendant Allied provided staffing for the Tulsa Municipal Jail.

3. Defendant Detention Officer Regal is, upon information and belief, a resident of Tulsa County Oklahoma. DO Regal was, at all times relevant hereto, acting in the scope of his employment as an employee and/or agent of Defendant Allied and/or Defendant City of Tulsa.

4. Defendant City of Tulsa, Oklahoma ("City"), is a municipality located in Tulsa County, Oklahoma. The City maintains and oversees the Tulsa Municipal Jail ("Jail"). While Defendant Allied provides staffing for the Jail, the City oversees the Jail's maintenance, policies, procedures, and staffing. With regards to the latter, the City has the power to remove Allied employees from their position at the Jail for any reason at any time.

5. The incidents and injuries that are the subject of this dispute occurred in Tulsa County, Oklahoma.

6. This Court has jurisdiction and venue is proper in Tulsa County, Oklahoma.

## FACTS COMMON TO ALL CLAIMS

7. Paragraphs 1-6 are incorporated herein by reference.

8. At all times relevant hereto, Defendant Allied provided staffing for the Tulsa Municipal Jail ("Jail") located at 600 Civic Center, Tulsa, OK.

9. On or about January 9, 2023, Plaintiff Robyn Parker was incarcerated at the Jail.

10. Defendant Regal was, at all pertinent times, an employee and/or agent of Allied/City of Tulsa who worked as a Detention Officer ("DO") at the Jail.

11. On January 9, 2023, DO Regal used excessive force on Plaintiff, causing her severe pain and breaking her arm.

12. Plaintiff was in a cell with a few other inmates, but the cell did not have a sink or source of water.

13. The other inmates had been pressing the intercom asking for water, which apparently angered the Jail employees.

14. DO Regal and another DO came to Plaintiff's cell and Plaintiff raised her hand and asked for some water. Apparently enraged that Plaintiff was asking for water, DO Regal and the other DO aggressively approached Plaintiff.

15. Plaintiff, fearing for her safety, dropped to the ground and put her hands behind her back. DO Regal and the other DO approached Plaintiff and put their hands on her.

16. DO Regal and the other DO started violently assaulting Plaintiff, forcefully bending her arms back and up as she cried out in pain.

17. When DO Regal pulled Plaintiff's arm up and back, she heard and felt it "pop." Plaintiff immediately felt extreme pain and then her arm went numb.

18. The DOs continued pulling and twisting Plaintiff's arms even after she complained that her arm had popped, causing her severe pain and discomfort.

19. When DO Regal and the other DO used force on Plaintiff, she was unarmed, compliant, not resisting, not attempting to flee, and posed no risk of danger to herself, the DOs, or anyone else.

20. At all pertinent times, DO Regal and the other DO were acting in furtherance of their duties as employees and/or agents of Allied/City of Tulsa

21. As a result of the DOs' acts, Plaintiff suffered severe pain, physical injuries, medical expenses and mental pain and suffering.

22. Plaintiff was transported, via EMSA, to Hillcrest medical center where she was diagnosed with a closed nondisplaced fracture of coronoid process of her right ulna.

23. There is an affirmative link between the aforementioned excessive force utilized by DO Regal and the other DO and policies, practices and/or customs which the City of Tulsa and Allied promulgated, created, implemented and/or possessed responsibility for.

24. On information and belief, the City and Allied failed to adequately train and supervise their officers, including DO Regal, with respect to, *inter alia*: use of force, de-escalation, the use of force continuum, appropriate use of force in a correctional setting, not using force in retaliation, reporting instances of excessive force, and use of force on nonresistant, compliant inmates.

25. There were several additional instances, prior to January 2023, in which detention officers at the Jail, employees/agents of Allied/the City, used unreasonably excessive force on compliant, nonresistant inmates, causing them serious injury.

26. Indeed, Fox 23 news published a story in April 2023 that details a longstanding culture of excessive force and deliberate indifference to inmates at the Jail.

27. The article reports that a woman named Kejuana Morrison alleged that she was assaulted by a detention officer at the Jail on January 8, 2023.

28. Ms. Morrison alleged that when she was booked into the Jail (for outstanding traffic violations), she was asked by a male detention officer to lift her arm. Ms. Morrison complied, but did not lift her arm very high, while informing the Jail employee that she had preexisting health conditions which limited the height to which she could lift her arm.

29. Without provocation, and in apparent retaliation for not lifting her arms high enough, the detention officer then shoved Ms. Morrison against a wall, took her to the ground, and kneeled on her neck. Ms. Morrison never resisted, was always compliant, and posed no risk of threat to the officer or anyone else.

30. There were other Jail employees present for this vicious assault on Ms. Morrison, but they just stood idly by, watching the other officer attack her for no reason.

31. Additionally, a former detention officer who worked at the Jail from approximately August 2020-August 2021, Kiauna Raynu, told the article's author that she had "seen excessive force used on several occasions" during her employment at the Jail. Ms. Raynu also claimed that she witnessed inmates being refused medical care when they asked for it and that she was verbally assaulted by her supervisor on a regular basis.

32. Another former Jail employee, who wished to remain anonymous in the Fox 23 story, was quoted as stating: "I have never in my life seen people be treated the way they've been treated at

that jail. It's almost sickening to think about the things I've witnessed as an employee there."

33. The former Jail employees initially reported misconduct that they witnessed, such as other employees using excessive force, to their supervisors, but soon found that anyone who reported another Jail employee's misconduct was actually punished. Ms. Rayanu said that, "[w]orking in the Tulsa Municipal Jail[,] if you stand up and say something you don't have a job."

34. The anonymous former employee, who spoke on camera with Fox 23, although with her face not visible, stated that she had sent "pages of emails…incident after incident" of excessive uses of force at the Jail to the Jail's leadership, but nothing was done to discipline the offenders or further train the employees.

35. Benevolent Jail employees stopped reporting misconduct, worsening the culture of violence and deliberate indifference at the Jail.

36. Upon information and belief, the City and Allied were aware of this pattern of excessive force at the Jail but took no steps to provide additional training or supervision and failed to discipline the detention officers who used excessive force.

37. As further evidence that the City/Allied ratified the unconstitutional conduct of their employees, in May 2023, another detention officer at the Jail used excessive force on inmate Tyler Johnson.

38. On May 1, 2023, Mr. Johnson was in a pod at the Jail with five other inmates. One of those inmates appeared to be very ill and was vomiting blood, so Mr. Johnson used the Jail's intercom system to request medical attention for the other inmate. The Jail employees responded to Mr. Johnson's request by stating, "we don't do that here."

39. Another inmate, Torrik Lewis, also advocated for the sick inmate. In retaliation, Allied employee Jack Kranz put Mr. Lewis in handcuffs and placed in him 12-hour isolated holding.

40. Once DO Kranz returned from placing Inmate Lewis in a holding cell for simply

5

advocating for the severely ill inmate, DO Kranz berated Mr. Johnson for complaining about how the other inmates were being treated.

41. A short time later, DO Kranz returned to Mr. Johnson's cell and again berated him. Mr. Johnson said that Kranz was being unprofessional and Johnson was going to file a complaint about him. In response, DO Kranz told Mr. Johnson that he, too, would be placed in isolation.

42. Mr. Johnson turned around and put his hands behind his back to be handcuffed. DO Kranz then, without provocation, spun Mr. Johnson around and smashed his shoulder into the cell, dislocating it. Mr. Johnson fell to the ground and cried out in pain. DO Kranz bent down and pulled Mr. Johnson up by the arm, popping his shoulder back into place.

43. DO Kranz then said, "if you think that hurts, I'll show you something that really hurts," and twisted Mr. Johnson's wrist back, fracturing it.

44. Mr. Johnson, in excruciating pain, told DO Kranz he was going to file a police report against him. DO Kranz retorted that he didn't care, because he had "been to jail before."

45. Upon information and belief, DO Kranz, who had a history of using excessive force before the incidents in May 2023, was not punished by the City or Allied.

46. The City and Allied knew, must have known or should have known that, due to the obviously inadequate training and supervision, that unconstitutional excessive use of force by Allied personnel, including DO Regal, was probable but failed to take reasonable measure to alleviate the risk of harm.

47. Tulsa Police Department ("TPD") Major Travis Yates oversees the Jail. Major Yates has stated that the City oversees Allied's policies, procedures, and conduct at the Jail.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE
(AS TO DEFENDANTS REGAL AND ALLIED)

48. The foregoing paragraphs are incorporated herein by reference.

49. Defendant Allied had a duty to Plaintiff to exercise reasonable care to ensure that staff at the Jail would safely perform their duties without causing unnecessary injury or harm to inmates.

50. Defendant Regal had a duty to exercise reasonable care in performing his duties as a Detention Officer at the Jail.

51. Defendants breached these duties owed to Plaintiff.

52. This breach by the Defendants was the actual and proximate cause of Plaintiff's injuries and damages.

53. As a result of Defendants' breach, Plaintiff suffered personal injury, including severe bodily injury, mental and physical pain and suffering and medical expenses.

54. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to pecuniary and compensatory damages.

55. Allied is vicariously liable for the negligence of Regal and the other DO who used force on Plaintiff.

## COUNT II – EXCESSIVE USE OF FORCE
### (Fourteenth and/or Fourth Amendment; 42 U.S.C. § 1983)

■ **Individual Liability and Underlying Violation**

56. Paragraphs 1-55 are incorporated herein by reference.

57. At the time of the complained of events, Plaintiff, as a pretrial detainee, had a clearly established constitutional right under the Fourteenth and/or Fourth Amendment to be secure in her person and free from objectively unreasonable seizure through excessive force to injure her and her bodily integrity.

58. Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

59. In the totality of the circumstances, at the time that the violent force was used by DO Regal, Ms. Parker was: 1) unarmed; 2) compliant; 3) not fleeing; and 4) not posing threat to herself, the officers, or anyone else.

60. The use of violent force by DO Regal under the circumstances described herein was excessive and objectively unreasonable.

61. DO Regal applied objectively unreasonable and excessive physical force on Plaintiff, thereby causing her serious bodily injures, as well as mental pain and anguish.

62. As a direct proximate result of DO Regal's unlawful conduct, Ms. Parker has suffered actual physical injuries, medical expenses (past and future), mental and physical pain and suffering and other damages and losses as described herein entitling her to recover compensatory and special damages in amounts to be determined at trial.

- **Municipal Liability (Allied and the City of Tulsa)**

63. Paragraphs 1-62 are incorporated herein by reference.

64. The aforementioned acts of excessive force by DO Regal (and the other DO) are causally connected with customs, practices, and policies which the City of Tulsa/Allied promulgated, created, implemented and/or possessed responsibility for.

65. On information and belief, the City and Allied failed to adequately train and supervise their officers, including DO Regal and the other DO who used force on Plaintiff, with respect to, *inter alia*: use of force, de-escalation, the use of force continuum, appropriate use of force in a correctional setting, not using force in retaliation, reporting instances of excessive force, and use of force on nonresistant, compliant inmates.

66. The City/Allied knew, must have known or should have known that, due to the obviously inadequate training and supervision, that unconstitutional excessive use of force by Jail personnel, including DO Regal and the other DO who used force on Plaintiff, was probable, but failed to take

reasonable measure to alleviate the risk of harm.

67. The City/Allied, through their continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Ms. Parker's, health and safety.

68. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Plaintiff suffered injuries and damages as alleged herein.

WHEREFORE, based on the foregoing, Plaintiff prays that this Court grant her the relief sought including, but not limited to, actual compensatory and punitive damages in amounts to be determined by a jury, with interest accruing from date of filing of suit, reasonable attorney's fees, and all other relief deemed appropriate by this Court.

Respectfully submitted,

**SMOLEN & ROYTMAN,**

Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
701 South Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667
(918) 585-2669 (Fax)

*Attorneys for Plaintiff*