IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBYN PARKER,<br><br>    **Plaintiff,**<br>v.<br><br>UNIVERSAL PROTECTION SERVICE, LP d/b/a ALLIED UNIVERSAL SECURITY SERVICES, DETENTION OFFICER REGAL, and CITY OF TULSA, OKLAHOMA<br><br>    **Defendant.** | Case No. 25-cv-68-JFH-MTS |

## ORDER

Now before the Court are Motions to Dismiss filed by Defendants City of Tulsa ("the City") [Dkt. No. 6] and Allied Universal Security Services ("Allied") [Dkt. No. 7]. Both Defendants maintain that Plaintiff Robyn Parker has failed to state a §1983 claim for excessive use of force. *See* Dkt. No. 6-7. Additionally, Defendant Allied argues that it is entitled to immunity regarding Plaintiff's tort claims under the Oklahoma Governmental Tort Claims Act. Dkt. No. 7. Plaintiff has responded to Defendants' Motions [Dkt. Nos. 21, 22], and the City has filed a Reply in support of its Motion to Dismiss [Dkt. No. 24]. These matters are ripe for consideration accordingly.

As will be explained in further detail below, this Court concludes that Plaintiff has stated a plausible claim for relief under §1983 for violation of her constitutional rights against both Defendants; however, Plaintiff's tort claims against Allied must be dismissed.

## PROCEDURAL AND FACTUAL BACKGROUND

I. **Plaintiff's Allegations against Defendants.**

Plaintiff alleges that Defendant Allied is a foreign for-profit limited partnership that provides staffing for the Tulsa Municipal Jail (the "jail"); Plaintiff further alleges that the City is responsible for the Jail's maintenance, policies, procedures, and staffing. Dkt. No. 2-2 at ¶¶ 2, 4, 64. Plaintiff also alleges that both the City and Allied are responsible for promulgating and maintaining policies, practices, and customs within the jail, and that both Allied and the City failed to adequately supervise the Jail's detention officers or train the officers with respect to appropriate use of force. *Id*. at ¶¶ 23-24, 46, 65.

Plaintiff alleges that she was incarcerated in the Jail on January 9, 2023. Dkt. No. 2-2 at ¶ 9. Detention officers at the jail were angered by Plaintiff's cellmates, who had pressed the intercom button several times to request water. *Id*. at ¶¶ 12-14. Plaintiff alleges that Detention Officer Regal approached her cell and, when Plaintiff raised her hand to ask for water, Regal and another detention officer approached Plaintiff angrily. *Id*. at ¶ 14. Plaintiff, fearing for her safety, dropped to the ground and placed her hands behind her back; DO Regal and another officer nevertheless grabbed Plaintiff's arms violently and pulled her arms up and back until Plaintiff felt her arm "pop." *Id*. at ¶¶ 15-17. Plaintiff immediately felt extreme pain and her arm went numb, but the detention officers continued pulling on Plaintiff's arm. *Id*. at ¶¶ 17-18. Plaintiff was later transported via EMSA to Hillcrest Hospital, where she was diagnosed as having a closed nondisplaced fracture of the coronoid process of her right ulna. *Id*. at ¶ 22. Plaintiff alleges that she was compliant with the detention officers at all times, was unarmed, not resisting, nor attempting to flee, and that she posed no danger to the detention officers or anyone else. *Id*. at ¶ 19.

Plaintiff, citing a news article published in April 2023, further alleges that several former detention officers within the Jail have spoken about the frequent use of excessive force at the Jail. *Id*. at ¶¶ 26-34. One employee, who worked within the jail from August 2020 to August 2021, stated that she had witnessed excessive force "on several occasions." *Id*. at ¶ 31. Another employee stated that the treatment of the inmates at the Jail was poor and "almost sickening," and indicated that he or she had witnessed numerous incidents of excessive force. *Id*. at ¶¶ 32, 34. These employees also indicated that reporting of incidents was discouraged by Jail administration and would lead to termination from employment. *Id*. at ¶¶ 33, 35.

Plaintiff also alleges that on January 8, 2023, there was a similar excessive use of force incident at the Jail involving another female inmate, wherein a detention officer shoved the woman against a wall, took her to the ground, and kneeled on her neck without provocation. *Id*. at ¶¶ 27-30. Plaintiff alleges that another excessive use of force incident took place in May of 2023 when another detention officer slammed a sick inmate into a cell wall, injuring the inmate's shoulder and arm. *Id*. at ¶¶ 37-45.

## II.     Institution of lawsuit and procedural history.

Plaintiff filed this lawsuit in the District Court of Tulsa County on January 8, 2025. Dkt. No. 2-1 at 2. Plaintiff's Petition alleged the above facts and asserted a cause of action against both Allied and the City under 42 U.S.C. §1983 for violation of her constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from unreasonable seizure. Dkt. No. 2-2 at ¶¶ 63-68. Plaintiff has also alleged a negligence claim against Allied and Detention Officer Regal. *Id*. at 48-55. Defendant Allied removed this matter to this Court on February 11, 2025. Dkt. No. 2.

The City filed its Motion to Dismiss on February 18, 2025. Dkt. No. 6. The City moves pursuant to Fed. R. Civ. P. 12(b)(6), contending that Plaintiff's allegations are insufficient to state a claim for which relief may be granted. *Id.* In particular, the City challenges the sufficiency of Plaintiff's allegations regarding the City's alleged policies, practices, and procedures, which undergird Plaintiff's *Monell* liability claim against the City. Dkt. No. 6 at 4-12. The City also requests that the Court incorporate the City's contract with Defendant Allied, contending that the contract is central to Plaintiff's Complaint, and arguing that the Contract demonstrates that the City cannot be responsible for the actions of the detention officers in the Jail. *Id*. at 3-4.

Defendant Allied also challenges the sufficiency of Plaintiff's allegations to support her *Monell* liability claim against Allied [Dkt. No. 8 at 6-9], and Allied further argues that this Court lacks jurisdiction to decide Plaintiff's tort claims against Allied, as Plaintiff has failed to comply with the Oklahoma Governmental Tort Claims Act [Dkt. No. 8 at 3-6].

## ANALYSIS

### I. Standard of Review

In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562. Although decided within an antitrust context, *Twombly* stated the pleadings standard for all civil actions. *See Ashcroft v. Iqbal*,

556 U.S. 662 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant.  *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir.2002).  However, a court need not accept as true those allegations that are conclusory in nature.  *Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs,* 263 F.3d 1151, 1154–55 (10th Cir.2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir.1991).

## II. Plaintiff's tort claims against Allied should be dismissed.

Defendant Allied argues that as a private correctional company contracted with the City, it is within the ambit of the Oklahoma Governmental Tort Claims Act ("OGTCA") and that, because Plaintiff failed to comply with the notice provisions of the OGTCA, Plaintiff's tort claims against Allied must be dismissed.  The Court agrees.

The state of Oklahoma has adopted the doctrine of sovereign immunity, declaring that it, its political subdivisions, and all of their employees "shall be immune from liability for torts."  51 Okla. Stats. § 152.1.  The only means by which a plaintiff may bring suit against the state and other covered entities, is through compliance with the OGTCA, the exclusive means by which Oklahoma has consented to subject itself to potential tort liability.  51 Okla. Stats. §§ 156-157.

Oklahoma law specifically provides that a plaintiff seeking to bring a civil action against a private correctional company like Allied must comply with the notice provisions of the OGTCA:

> No tort action or civil claim may be filed against any employee, agent, or servant of the state, the Department of Corrections, private correctional company, or any county jail or any city jail alleging acts related to the duties of the employee, agent or servant, until all of the notice provisions of the Governmental Tort Claims Act

> have been fully complied with by the claimant. This requirement shall apply to any claim against an employee of the state, the Department of Corrections, or any county jail or city jail in either their official or individual capacity, and to any claim against a private correctional contractor and its employees for actions taken pursuant to or in connection with a governmental contract.

57 Okla. Stat. § 566.4(B)(2).

Plaintiff's negligence claim alleging excessive use of force by an Allied employee within the Jail is a "claim against a private correctional contractor … for actions taken pursuant to or in connection with a governmental contract." *Id*. As such, it was incumbent upon Plaintiff to comply with "all of the notice provisions of the Governmental Tort Claims Act," and, as Plaintiff has not alleged that she has so complied with the OGTCA, her tort claim against Allied must be dismissed.

### III.  Plaintiff has stated plausible *Monell* claims for relief against Defendants.

Plaintiff alleges that both the City and Allied are responsible for policies, practices, and procedures within the Jail that led to the use of excessive force against Plaintiff in violation of her constitutional rights. Both Defendants argue that Plaintiff has failed to state a claim for relief.

### A.  The Court will not consider the extraneous document attached to the City's Motion.

The City first argues that this Court should hold that the City's contract with Allied is central to Plaintiff's Complaint and of undisputed authenticity and, as such, the City asks the Court to consider the content of the contract in ruling upon the City's Motion to Dismiss. Dkt. No. 6 at 3-4. This Court will not do so.

As a general rule, courts consider only the contents of a complaint in ruling upon a Rule 12(b)(6) motion to dismiss. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions may be made for: documents incorporated by reference into the complaint; documents "referred to in and central to the complaint, where no party disputes its authenticity," and matters regarding

6

which a court may take judicial notice. *Berneike v. CitiMortgage, Inc.* 708 F.3d 1141 (10th Cir. 2013).

Plaintiff's Complaint makes no reference to any particular contract or agreement between the City and Allied, and, instead, alleges only that Allied "provided staffing" at the Jail. Dkt. No. 2-2 at 1. Given that the Complaint makes no reference to the contract between the parties, this Court declines to find that the contract is either incorporated by reference or is "central to" Plaintiff's Complaint. This case is not comparable to the City's proffered authority, *Burke, v. City of Tulsa, et al.*, 21-CV-131-TS-SH, Dkt. No. 55, wherein the Court expressly noted that the Complaint contained numerous references to the contract, and the plaintiff made the contents of the contract central to her claims.

Because, in this Court's view, consideration of the City's attached documents would necessitate converting the City's Rule 12(b)(6) Motion into a Motion for Summary Judgment, the Court declines to consider the document. *See*, *Poole v. County of Otero*, 271 F.3d 955, 957 n.2 (10th Cir. 2001) (citing *Lybrook v. Members of the Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000)) ("The district court has the discretion to decide whether to convert a motion to dismiss into one for summary judgment."). The Court will not consider the extraneous document attached to the City's Motion to Dismiss or any of the City's arguments for dismissal that depend upon consideration of the contents of said contract.

### B.  Plaintiff has sufficiently alleged a *Monell* claim against Defendants.

Defendants both argue that Plaintiff has failed to plausibly allege sufficient facts to support a §1983 municipal liability claim. See Dkt. No. 6 at 4-11; Dkt. No. 8 at 6-10. Defendants both argue that Plaintiff has failed to provide sufficient facts to plausibly allege that Defendants were deliberately indifferent with respect to any policy, practice, or custom that caused Plaintiff's

deprivation of rights. In this Court's view, Defendants attempt to set an unreasonably high bar for pleading a §1983 claim, and Plaintiff's allegations are sufficient.

Title 42 U.S.C. §1983 provides a means of redress when an individual, acting under color of law, deprives another of his or her federally protected rights. One may bring a §1983 claim against a municipality or other corporate entity acting under color of law, but the Supreme Court has made clear that such a claim must be based upon the municipality's own unlawful acts – §1983 is not a mechanism for bringing a *respondeat superior* claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). As such, the Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997). According to the Tenth Circuit, such a municipal policy or custom may take any of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal citations omitted).

When a plaintiff alleges that a "facially lawful municipal action" has led to violation of the plaintiff's rights, then the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). Such "deliberate indifference" may be shown where "the municipality has actual or constructive notice that its action or failure to act is substantially certain

8

to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Such notice may normally be demonstrated through "proving the existence of a pattern of tortious conduct." *Id*. However, there may be deliberate indifference absent a pattern of tortious conduct where "a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id*. at 1307-08.

Turning to Plaintiff's allegations with these principles in mind, Plaintiff has properly alleged a §1983 *Monell* liability claim against Defendants.

Firstly, the Court notes that Plaintiff alleges that both the City and Allied are responsible for establishing the policies at issue. Dkt. No. 2-2 at ¶¶ 4, 23-24, 36, 46, 64-68. Defendants both take issue with this, arguing that Plaintiff improperly conflates the two entities or fails to account for their contractual relationship. Dkt. No. 6; Dkt. No. 8 at 1,8. The Court must take Plaintiff's allegations as true, and, in the Court's view, it is plausible that both Allied and the City would be responsible for, or at least have substantially overlapping responsibility for, policies and practices within the Jail. What is less plausible is the City's contention that, because it contracted with Allied, it can bear no legal responsibility for Allied's actions within the Jail. Common sense dictates that the City cannot avoid any and all responsibility for misdeeds in the Jail by contracting out responsibility for the upkeep of the Jail; the City retains some affirmative duty to avoid violating the constitutional rights of those it incarcerates – though the exact contours of that duty are not presently at issue. *West v. Atkins,* 487 U.S. 42, 56 (1988); *Anglin v. City of Aspen, Colo.*, 552 F. Supp. 2d 1229, 1244 (D. Colo. 2008).

As the Court reads the Complaint, Plaintiff alleges that the deprivation of her rights was caused by an unofficial custom or practice of violence and use of excessive force within the Jail

that was "so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788. To this end, Plaintiff alleges two specific incidents of excessive use of force within the Jail which took place on January 8, 2023 and in May of 2023. Dkt. No. 2-2 at ¶¶ 27-30, 37-45. While these incidents may not be sufficient of themselves to provide relevant notice to Defendants, these incidents do go some distance toward plausibly alleging that use of excessive force constituted an "informal custom" within the Jail at or around the time of Plaintiff's injury. *Bryson*, 627 F.3d at 788.

Plaintiff also alleges that multiple former detention officers within the Jail have made statements regarding the frequent violence and use of excessive force within the Jail. Dkt. No. 2-2 at ¶¶ 31-35. Both Defendants would have the Court disregard these statements as irrelevant to the plausibility of Plaintiff's claims, but the Court disagrees. *See*, *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1228 (D.N.M. 2015) (noting that "statements from police officers or other insiders" may support allegation of existence of policy or custom). The Court sees no reason to disregard such statements, especially given that, at this early stage of the litigation, the Court is bound to take Plaintiff's allegations as true. Taken together, the incidents of violence and the statements of the former Jail officers plausibly allege that there was an informal custom of violence and excessive use of force that was "so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788.

Lastly, Plaintiff alleges that Defendants failed to properly train the detention officers within the Jail regarding appropriate use of force. Dkt. No. 2-2 at ¶ 24. The Court agrees with Defendants that Plaintiff has not adequately alleged a prior pattern of tortious conduct sufficient to undergird her inadequate training claim. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61; *see also*

10

*Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("'[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Absent allegations of a prior pattern of similar tortious conduct, Plaintiff has not alleged that Defendants' alleged training deficiencies were undertaken with deliberate indifference. *Waller v. City & Cty. Of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). Moreover, Plaintiff's allegations of inadequate training are too bare and devoid of factual detail for this Court to hold that "a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Barney*, at 143 F.3d at 1307-08; see also, *Hernandez v. City & Cty. of Denver*, 2022 WL 3597452, 2022 U.S. Dist. LEXIS 151302 at *21-22 (D. Colo. Aug. 23, 2022) (holding that allegations were insufficient to allege defendants failed to adequately train officers where plaintiff had not alleged any facts concerning how the officers had been trained, who trained them, or why their training was deficient, and collecting similar cases).

## CONCLUSION

Plaintiff has plausibly alleged §1983 municipal liability claims against both the City and Allied. However, Plaintiff's failure to allege compliance with the OGTCA renders her negligence claim against Allied subject to dismissal, and Plaintiff has failed to adequately allege that Defendants maintained a policy of inadequately training detention staff.

**IT IS THEREFORE ORDERED**, Defendant City of Tulsa's Motion to Dismiss [Dkt. No. 6] **DENIED**, and the Motion to Dismiss filed by Defendant Universal Protection Services, LP d/b/a Allied Universal Security Services [Dkt. No. 8] is **GRANTED IN PART AND DENIED IN PART**.

DATED this 23rd day of May, 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE